# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PABLO GARCIA,                                    )
                                                 )
              Plaintiff,                          )
                                                 )        No. 17 C 3932
      v.                                          )
                                                 )        Judge Sara L. Ellis
CITY OF CHICAGO, a municipal corporation,        )
OFFICER RICHARD BARBER (Star #17969),            )
SERGEANT THOMAS HAMILTON                          )
(Star # 1584), OFFICER J.C. ROMAN                 )
(Star #16957), OFFICER R. CHAPA                   )
(Star # 16572), and UNKNOWN CITY OF               )
CHICAGO POLICE OFFICERS,                          )
                                                 )
              Defendants.                         )

## OPINION AND ORDER

Chicago Police Officers Richard Barber, Julio Roman, and Roberta Chapa arrested and detained Plaintiff Pablo Garcia while he sat in a parked car, charging Garcia with aggravated driving under the influence ("DUI"). After a judge dismissed the charges against him, Garcia filed this civil rights suit pursuant to 42 U.S.C. § 1983 against Barber, Roman, Chapa, and Sergeant Thomas Hamilton (the "Officer Defendants"), the City of Chicago ("City"), and unknown Chicago Police officers.[1] In his amended complaint, Garcia brings federal claims for unlawful seizure, violation of due process, and civil conspiracy, and state law claims for malicious prosecution and intentional infliction of emotional distress ("IIED"). Garcia also pursues an indemnification claim against the City. The Officer Defendants and the City move for summary judgment on all of Garcia's claims. Genuine issues of material fact prevent the Court from granting summary judgment with respect to (1) whether Barber's initial approach of

---

[1] Garcia also named John Gavin as a Defendant, but the parties subsequently agreed to his dismissal. Docs. 54, 55.

Garcia violated his Fourth Amendment rights; (2) whether Barber, Hamilton, and Roman allegedly forced Garcia to take a breathalyzer test; and (3) whether the fees imposed in connection with the impoundment of Garcia's vehicle violated the excessive fines clause of the Eighth Amendment. But the Court concludes that Garcia has not demonstrated any issues of fact with respect to his other claims arising out of the incident and so these claims cannot proceed to trial.

## BACKGROUND[2]

On February 22, 2017, around 9:00 p.m., Garcia went to La Sirena, a bar-restaurant near 59th Street and Kedzie Avenue in Chicago, Illinois. He had two beers at La Sirena. Around 10:00 p.m., Garcia proceeded to Rincon Norteño at 55th Street and Spaulding Avenue. He had four beers and a tequila shot at Rincon Norteño and left around 11:20 p.m. Garcia testified that, before leaving, he retrieved his keys from a friend to open his car and wait for the friend to drive him home. Garcia stated that his car was not on the curb. He did not believe he had staggered to the car or any other trouble walking to it. When he got to his car, which was parked on Spaulding, Garcia sat in the driver's seat. He testified that he first had the car keys in his hand and later placed them on the seat. According to Garcia, within seconds of his entry into the car, a patrol car, which he had previously observed parked on the street, pulled up in front of his car with its lights on. Garcia stated that the officer asked for identification, told Garcia to exit the car, and called for a Spanish-speaking officer. Garcia provided the officer with his Amtrak ID because he did not have a valid driver's license at the time.

Barber, the officer who initially stopped Garcia, testified instead that he was on patrol driving southbound on Spaulding from 54th Street with no particular destination. He claimed to

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to Garcia, the non-movant.

have noticed Garcia's car because it was parked about a foot further toward the curb than the other cars. Barber testified that, having pulled up next to Garcia's car, he observed Garcia sleeping in the driver's seat with his keys in a clenched fist. Barber stated he exited his car to conduct a well-being check, having no suspicion at the time that Garcia had committed, was in the process of committing, or was going to commit a crime. Barber recalled Garcia giving him an Amtrak ID in response to his request for identification. Barber observed Garcia slurring his speech and having difficulty understanding Barber, so Barber called for a Spanish-speaking officer. Barber also testified that Garcia had a strong alcohol odor on his breath and bloodshot eyes.

Soon after, Roman and Chapa, partners for the day, arrived on the scene. Barber determined they should conduct a field sobriety test in the parking lot of a nearby Walgreens, which provided a well-lit and flat surface. Roman and Chapa did not participate in this decision. Roman and Chapa then transported Garcia to the parking lot in the back of their squad car, with Chapa driving.

When they arrived at the parking lot, Barber set his dashcam video and microphone to record the field sobriety tests. Barber provided instructions, which Roman translated for Garcia. When asked on camera how many drinks he had, Garcia responded that he had three shots of tequila. He also explained that he had provided an ID from his prior job at Amtrak. Barber then demonstrated and explained the first field sobriety test, the one-leg test, which required Garcia to stand straight with his hands at his side, lift one leg off the ground, and then count until told to stop. Roman explained the test to Garcia in Spanish, and Garcia indicated he understood. But when asked to perform the test, Garcia performed approximately seven knee lifts followed by hand movements. On a second try, Garcia performed about four kicks and additional hand

movements. Barber then explained and demonstrated the walk and turn test, which required Garcia to take nine steps, heel to toe, make a turn, and then take nine steps heel to toe in the other direction, all along a yellow line in the parking lot. Roman again translated the instructions into Spanish. Although Garcia indicated he understood, he did not follow the directions, failing to walk heel to toe or in a straight line. After observing these steps, Barber decided to place Garcia under arrest, handcuffed him, and had him transported to the 8th District police station. Barber also made the decision to tow Garcia's vehicle. Chapa completed the vehicle impound report and called in the tow. Hamilton approved the report and the tow.

At the station, Garcia testified that Hamilton and a Hispanic officer who had not been present at the scene forced him to take a breathalyzer test. Barber, on the other hand, indicated that he and Roman completed the booking process and administered the breathalyzer. The test revealed Garcia had a blood-alcohol content of .365. After Garcia took the breathalyzer test, officers then read him his *Miranda* rights.

On February 23, 2017, the State charged Garcia with aggravated DUI and three traffic offenses. Garcia remained incarcerated at the Cook County Jail until March 7, 2017. On March 28, 2017, after a hearing, Judge James Brown found that probable cause did not exist for the aggravated DUI charge. The State did not present any evidence from Garcia's pre-*Miranda* statements against him at the probable cause hearing. The State's Attorney declined to prosecute the remaining charges.

On March 9, 2017, Garcia requested a hearing to contest the impoundment of his car. The City sent him a notice of hearing on March 15, scheduling the hearing for March 24. Garcia did not appear at that hearing, and the administrative law judge entered a default judgment against Garcia for $4,125, which included penalties, a storage fee, and a tow fee. Garcia did not

pursue the matter further to attempt to retrieve the car, stating that it was not worth the money to do so. Although he retrieved some personal items from his car, Garcia testified that he did not recover approximately $200 in cash that he had in his wallet. He also claims not to have received his jeans and a leather jacket after bonding out of jail.

Garcia has not experienced a similar situation and does not know of any other individuals arrested by the Chicago Police Department for sitting in a parked car. At the time of his arrest, the Chicago Police Department had in effect a general order titled "Driving While Under the Influence (DUI) and Zero Tolerance," which provides guidelines for DUI arrests and provides for the impoundment of the arrestee's vehicle.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.      False Arrest Claim

Garcia alleges that the Officer Defendants violated his Fourth Amendment right to be free from unreasonable seizures and arrest without reasonable suspicion or probable cause.  The Officer Defendants argue that probable cause existed for Garcia's arrest.  The existence of probable cause bars a false arrest claim.  *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010).  "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief" that the individual has committed or is about to commit a crime.  *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).  To evaluate probable cause, the Court makes an objective examination of the facts and determines what conclusions an arresting officer might have reasonably drawn from those facts.  *Id.*  Probable cause "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."  *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted).  For this reason, the fact that a judge declined to find probable cause does not establish that the Officer Defendants lacked probable cause.  *See Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998); *Williams v. Kobel*, 789 F.2d 463, 468–70 (7th Cir. 1986).

Alternatively, the Officer Defendants contend that qualified immunity protects them from Garcia's claim.  Qualified immunity protects an officer from civil liability stemming from discretionary functions so long as his conduct does not violate a clearly established statutory or

constitutional right about which a reasonable officer would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Thus, qualified immunity protects the Officer Defendants if a reasonable officer could have believed that he had probable cause to arrest Garcia in light of the information the Officer Defendants possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Courts have referred to this standard as "arguable probable cause." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714–15 (7th Cir. 2013). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

But before determining whether the Officer Defendants had probable cause to arrest Garcia or are shielded by qualified immunity, the Court must consider how to characterize the sequence of events at issue. The Officer Defendants argue that Barber's initial interaction with Garcia constituted a well-being check, which then evolved into a *Terry* stop and ultimately an arrest. Barber testified that, as he drove southbound on Spaulding on patrol, he noticed Garcia's car parked further toward the curb than others and Garcia sleeping in the driver's seat with the keys in his fist. This, according to Barber, prompted him to get out of his car to conduct a well-being check. Garcia, on the other hand, claims the initial encounter was an illegal *Terry* stop because an officer was lying in wait when Garcia exited Rincon Norteño and immediately activated his lights and pulled up next to Garcia's car after Garcia entered it. Under either version, Barber admits that he did not suspect Garcia had committed a crime, was in the process of committing a crime, or was going to commit a crime when he first approached Garcia's car.

These conflicting accounts prevent the Court from making a definitive determination as to whether Barber's initial approach of Garcia amounted to a *Terry* stop or a well-being check.

A seizure for purposes of the Fourth Amendment does not occur simply because a police officer questions an individual in a public place as long as the individual "would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). Where an individual's freedom of movement is "restricted by a factor independent of police conduct," including sitting in a parked car, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 436. Here, Barber pulled up next to or in front of Garcia's car. Some courts have concluded that such a restriction in movement—with Garcia not having room to maneuver and leave the scene—amounts to a seizure. *See United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015) (officers' positioning of two bikes at end of alley sufficiently communicated individual was not free to leave, noting that "officers need not totally restrict a citizen's freedom of movement in order to convey the message that walking away is not an option"); *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006) (police seized car when they placed their bikes in front of and on either side of car); *cf. United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006) (defendant not seized where police parked their car twenty feet away and the defendant "was not blocked in on three sides, or even two"). The use of flashing lights, in Garcia's version, also could contribute to a finding of a seizure. *See Smith*, 794 F.3d at 686 (a seizure can occur "when police activate a siren or flashers"); *United States v. Windom*, No. 10-cr-30074-MJR, 2010 WL 4384253, at *5 (S.D. Ill. Oct. 29, 2010) ("[A] reasonable person in Windom's position—who saw a police car pull up with lights flashing and park in front of his vehicle, effectively blocking the path before him, and immediately saw two officers in police attire hastening to either side of his vehicle—would *not* have believed that he was free to leave at

that point."). *But see United States v. Clements*, 522 F.3d 790, 794–95 (7th Cir. 2008) (although police illuminated flashing lights for identification and safety purposes, they did nothing else that could cause the defendant to feel his freedom was restrained, such as surrounding his car or taking other action to prevent the defendant from driving away). Therefore, a reasonable juror could conclude that Barber's initial approach amounted to a *Terry* stop.

To the extent a jury could conclude that the initial approach amounted to a *Terry* stop, Barber all but admits he did not have reasonable suspicion for such a stop. "The general rule established by *Terry v. Ohio* is that officers may conduct a brief investigatory stop if they reasonably suspect that an individual has committed or is about to commit a crime." *Torry v. City of Chicago*, 932 F.3d 579, 587 (7th Cir. 2019). Barber testified that, at the time he approached Garcia, he did not suspect Garcia had committed, was in the process of committing, or was going to commit a crime. This testimony undermines any argument that Barber had reasonable suspicion to approach Garcia in his vehicle. *See Tucker v. Torres*, No. 16 C 2480, 2018 WL 6045217, at *3 (N.D. Ill. Nov. 19, 2018) (where officer testified only to having a hunch instead of articulable reasonable suspicion that plaintiff had committed, was committing, or was about to commit a crime, such a hunch could not support a *Terry* stop). And because, to the extent a jury accepts Garcia's version of events, such an approach, without any suspicion of illegality, clearly violates the Fourth Amendment, qualified immunity would not protect Barber on this aspect of Garcia's Fourth Amendment claim. *See District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (noting that qualified immunity would not apply in the 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances"); *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be

disentangled from disputed facts, the issue cannot be resolved without a trial.").  Therefore, Garcia may proceed against Barber with respect to whether the initial encounter violated the Fourth Amendment.  He cannot proceed against Chapa, Hamilton, or Roman with respect to the initial encounter, however, because nothing in the record suggests they had any direct involvement in this interaction or the opportunity to intervene but did not do so.  *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." (citation omitted) (internal quotation marks omitted)); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (defendant may be liable for failure to intervene where he "had a realistic opportunity to intervene to prevent the harm from occurring" (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994))).

Although a question therefore exists as to the propriety of the initial encounter between Barber and Garcia, this does not preclude the Court from addressing the remainder of Garcia's Fourth Amendment Claim.  *See Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019) ("[T]he fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers."); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) ("[R]egardless of whether Troopers Chapman and Howell had justification for searching the trunk of the car that Vaughn was driving, their discovery established probable cause for the charge[.]").  Indeed, the facts in the record establish that, once Barber observed Garcia and spoke with him, he developed reasonable suspicion and ultimately probable cause to arrest Garcia for aggravated DUI.  Section 11-501(a) of the Illinois Vehicle Code provides that "[a] person shall not drive or be in actual physical control of any vehicle within this State while:

(1) the alcohol concentration in the person's blood, other bodily substance, or breath is 0.08 or more . . . ; [or] (2) under the influence of alcohol." 625 Ill. Comp. Stat. 11-501(a). An aggravated DUI requires, as relevant here, that the person committing the violation in § 11-501(a) not have a valid driver's license. 625 Ill. Comp. Stat. 11-501(d)(H). Garcia admits he did not have a valid driver's license. And Barber's observation of slurred speech, an odor of alcohol, and bloodshot eyes sufficed to suggest that Garcia was under the influence of alcohol. *Johnson v. City of Loves Park*, No. 14 C 02694, 2016 WL 851988, at *8 (N.D. Ill. Mar. 4, 2016) (probable cause for DUI arrest existed where officer was confronted with an individual with alcohol on her breath, slurred speech, red and bloodshot eyes, and who lost her balance during the field sobriety test); *People v. Robinson*, 859 N.E.2d 232, 244, 368 Ill. App. 3d 963, 307 Ill. Dec. 232 (2006) (officer's observation of "defendant's dilated eyes, slurred, mumbled speech and a very strong odor of alcoholic beverage on his breath" provided reasonable suspicion and, after further observation, probable cause for DUI); *People v. Wingren*, 521 N.E.2d 130, 135, 167 Ill. App. 3d 313, 118 Ill. Dec. 62 (1988) ("Probable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes.").

As for the remaining element, Garcia argues that a reasonable officer would not have concluded that he had actual physical control of the vehicle where he slept in a parked car without the key in the ignition. "A person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control." *City of Naperville v. Watson*, 677 N.E.2d 955, 957, 175 Ill. 2d 399, 222 Ill. Dec. 421 (1997). The determination of actual physical control is fact-dependent, considering, for

example, whether the person (1) is in the driver's seat, (2) has possession of the key, (3) has the capability to operate the car, and (4) is alone with the doors locked. *Id.*; *People v. Slinkard*, 841 N.E.2d 1, 5, 362 Ill. App. 3d 855, 298 Ill. Dec. 858 (2005). The Illinois Supreme Court has rejected the argument that "intoxicated individuals who voluntarily choose to sleep off the effects of alcohol in a parked vehicle may do so without fear of prosecution." *Watson*, 677 N.E.2d at 958–59 ("An intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of his vehicle at any time while still intoxicated."). In a case with facts similar to those here, the Illinois Appellate Court refused to reverse a DUI conviction where the officer found the defendant slumped over the steering wheel in the driver's seat with the keys in his right hand. *People v. Morris*, 16 N.E.3d 269, 276–77, 2014 IL App (1st) 130512, 384 Ill. Dec. 173 (2014) ("Just because a defendant is asleep in a vehicle does not mean he or she is not in actual physical control of it."). Given this caselaw, a reasonable officer could have concluded that Garcia had actual physical control of the vehicle so as to provide probable cause for his arrest. *See id.*

To summarize, disputed issues of fact require Garcia's claim surrounding Barber's initial encounter with Garcia to proceed to trial, but only against Barber and not Chapa, Hamilton, or Roman.[3] But the Court enters summary judgment for the Officer Defendants on the remainder of Garcia's Fourth Amendment claim related to his continued detention and ultimate arrest.

## II. Vehicle Seizure Claim

In Garcia's response to the Officer Defendants' motion for summary judgment, he argues that the impounding of his car and related towing and storage fees violated the Fourth

---

[3] The Court notes that in *Martin*, the Seventh Circuit limited an individual's damages for an initial detention unsupported by reasonable suspicion, which was followed by a lawful arrest, to "the harm arising from his unconstitutional detention before his lawful arrest," disallowing any recovery for damages related to his post-arrest incarceration. 934 F.3d at 605–06.

Amendment and the Eighth Amendment's proscription on excessive fines, as applicable to the states under the Fourteenth Amendment. "The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996). The City's Municipal Code provides for impoundment where a driver commits a DUI or does not have a valid license. Municipal Code of Chicago §§ 7-24-226, 9-80-240. The Seventh Circuit has rejected facial challenges to the City's impound ordinance, concluding that "an ordinance authorizing a warrantless seizure is not 'unreasonable' under the Fourth Amendment when a police officer has probable cause to believe that a vehicle is subject to seizure because it was used in some violation of law," such as "having illegal drugs in it." *Bell v. City of Chicago*, 835 F.3d 736, 740 (7th Cir. 2016); *Lintzeris v. City of Chicago*, 276 F. Supp. 3d 845, 849 (N.D. Ill. 2017). Here, the Court has already determined that Barber had probable cause to arrest Garcia for a DUI. Garcia also acknowledges that he did not have a valid license. Garcia's seizure claim therefore fails.

Garcia also challenges the fees the City imposed for the towing and storage of his car, arguing these fees violated the Eighth Amendment's prohibition on excessive fines.[4] But neither side properly addresses the factors the Court should consider in determining the reasonableness of the fees. *See Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) (discussing challenge to ordinance imposing a fine on the owner of a vehicle in which illegal drugs or

---

[4] Such a claim does not readily appear in Garcia's amended complaint, but the Officer Defendants do not argue that Garcia cannot pursue the claim at this stage because it amounts to a new substantive claim instead of a new legal theory based on existing allegations. Although the Court questions whether Garcia has named a proper Defendant against whom the excessive fines claim can proceed, the parties do not address this issue and so the Court at this stage does not engage in that analysis.

firearms are found under the excessive fines clause and applying the Supreme Court's "gross disproportionality" test). Without more, then, the Court cannot determine the propriety of summary judgment as to his excessive fines challenge and allows it to proceed.

But to the extent Garcia claims that the Officer Defendants deprived him of due process by refusing to return his car absent payment of substantial charges and fines, that claim fails because Garcia did not pursue available state law remedies. Here, the City need only provide adequate post-deprivation remedies for any deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *Easter House v. Felder*, 910 F.2d 1387, 1404–05 (7th Cir. 1990). Although "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Garcia had several post-deprivation remedies available but failed to take advantage of them. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002) (noting that bailment or replevin actions may have been available to plaintiffs whose cars had been impounded). Therefore, he cannot now pursue a federal due process claim on this basis.

## III. Remaining Due Process Claims

Although Garcia did not clearly define the contours of his due process claim in his amended complaint, in his response, he focuses on two additional alleged violations: (1) the forced administration of a breathalyzer test and (2) the failure to give Garcia *Miranda* warnings until after he underwent the breathalyzer test. With respect to the alleged forced breathalyzer

test, "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Birchfield v. North Dakota*, --- U.S. ----, 136 S. Ct. 2160, 2184, 195 L. Ed. 2d 560 (2016). But the Officer Defendants "concede that when the record is taken in the light most favorable to the Plaintiff as to the forced Breathalyzer allegation, it would support a due process claim against Defendant Hamilton, the one named defendant Plaintiff identified as involved." Doc. 65 at 11. Neither side provides extensive analysis with respect to the basis for such a claim, but, given the Officer Defendants' concession that the facts taken in the light most favorable to Garcia could support such a claim, the Court proceeds on the assumption of its viability. The Officer Defendants, however, ask the Court to conclude that an individual cannot be physically forced to take a breathalyzer test because, as the Supreme Court observed, "[m]easurement of BAC based on a breath test requires the cooperation of the person being tested." *Birchfield*, 136 S. Ct. at 2168. But Garcia's claim does not necessarily run contrary to that observation; he contends that certain officers—either Hamilton, as Garcia testified, or Barber and Roman, as Barber testified—used force to keep Garcia's face to the device, preventing him from refusing to participate. Accepting Garcia's testimony as true, a reasonable juror could conclude that Hamilton, or one of the other officers, improperly forced the breathalyzer test on him. The Court therefore allows the forced breathalyzer claim to proceed against Barber, Hamilton, and Roman.[5]

---

[5] The Officer Defendants do not appear to argue that qualified immunity protects them from this aspect of Garcia's due process claim. *See* Doc. 65 at 13 (discussing the lack of clearly established law for the other due process allegations but not that related to the forced breathalyzer). To the extent any of these Defendants did not participate in allegedly forcing the breathalyzer test upon Garcia but were present during it and had the opportunity to intervene to prevent any constitutional violation, they could face liability for failing to intervene. *See Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014) ("Failure to intervene is not a claim for relief; rather, it is a theory of liability under section 1983, specifically, a way to prove the liability of a state actor who was not a direct participant in the challenged wrongdoing. It requires the plaintiff to show that a defendant who did not directly participate in the alleged constitutional wrong was aware it was happening or about to happen and had a realistic opportunity to prevent it, but instead stood by." (citations omitted)).

Garcia cannot proceed on his claim concerning the failure to receive *Miranda* warnings, however.  Initially, "any slurring of speech and other evidence of lack of muscular coordination" did not implicate *Miranda*.  *See Pennsylvania v. Muniz*, 496 U.S. 582, 591–92, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990).  Nor did the field sobriety tests or any statements Garcia made during those tests.  *Id.* at 602–04.  To the extent Barber questioned Garcia to determine whether he was intoxicated, such interrogation may have necessitated a *Miranda* warning.  *Id.* at 598–601.  But even so, Garcia does not point to the use of any un-*Mirandized* statements against him in a criminal prosecution.[6]  This precludes him from recovering for any *Miranda* violation.  *Chavez v. Martinez*, 538 U.S. 760, 766–67, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) (questioning of individual without *Miranda* warnings did not violate his self-incrimination rights where those statements were not used against him in a criminal case); *cf. Sornberger v. City of Knoxville*, 434 F.3d 1006, 1024–25 (7th Cir. 2006) (violation existed where pre-*Miranda* confession used at probable cause, bail, and arraignment hearings).  The Court would reach the same result even if any pre-*Miranda* statements were used to commence criminal proceedings against Garcia because the facts do not allow an inference that the State initiated criminal proceedings *because of* any such statements.  *See Conner v. Salaam*, No. 15-C-11, 2017 WL 395118, at *5 (E.D. Wis. Jan. 27, 2017) (explaining that the Seventh Circuit's holdings in *Sornberger* and *Aleman v. Village of Hanover Park*, 662 F.3d 897 (7th Cir. 2011), allow an action for a violation of *Miranda* under § 1983 only "when the incriminating statement is indispensable to an individual's

---

[6] Garcia agreed in the joint statement of facts that "[n]o evidence from pre-Miranda statements was used against him at the probable cause hearing," the only criminal proceeding in his case.  Doc. 64 ¶ 83.  But in his response, he argues that "Plaintiff in this case had criminal proceedings initiated against him due to statements made after his arrest . . . but before he was given *Miranda* warnings."  Doc. 72 at 11.  He fails to point to any specific statements used to initiate criminal proceedings against him so as to create a disputed issue of fact on this issue, and he cannot now contradict his admission that no pre-*Miranda* evidence was used in his criminal proceedings based on argument alone.

criminal proceeding"). Therefore, the Court enters judgment for the Officer Defendants on this aspect of Garcia's due process claim.

## III.    Civil Conspiracy Claim

To establish conspiracy liability under § 1983, Garcia must demonstrate that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). But Garcia presents no evidence, circumstantial or otherwise, of an agreement among the Officer Defendants to deprive him of his rights with respect to the initial stop, breathalyzer test, or the imposition of fines related to the towing and impoundment of his car. Thus, to the extent Garcia seeks to hold any of the Officer Defendants liable on a conspiracy theory, that avenue is foreclosed. *See id.* at 511 (circumstantial evidence of conspiracy cannot be speculative); *Wayne v. Kirk*, No. 13 C 8540, 2015 WL 5950900, at *3 (N.D. Ill. Oct. 13, 2015) (granting summary judgment on conspiracy claim where plaintiff did not present any evidence suggestive of an agreement among the officers).

## IV.    Malicious Prosecution Claim

Under Illinois law, a malicious prosecution claim requires that Garcia establish: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242, 169 Ill. 2d 504, 215 Ill. Dec. 98 (1996)). For purposes of a malicious prosecution claim, probable cause exists where the facts "would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the

accused committed the offense charged." *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (citation omitted). The Court considers whether probable cause for the prosecution existed as of the filing of the charging document, not at the time of arrest. *Holland*, 643 F.3d at 254. Here, Garcia's claim fails on the probable cause element. As the Court has already found, the Officer Defendants had probable cause to arrest Garcia based on Barber's observations and the field sobriety tests. Subsequent to his arrest, the breathalyzer test revealed Garcia had a blood-alcohol content level of .365, confirming intoxication above the legal limit. Therefore, because probable cause existed at the time of charging, the Court enters summary judgment for the Officer Defendants on the malicious prosecution claim.

## V. IIED Claim

Garcia's final claim against the Officer Defendants is one for IIED, claiming that the Officer Defendants engaged in extreme and outrageous conduct. To recover for IIED, Garcia must demonstrate that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)).

Garcia claims that the Officer Defendants engaged in extreme and outrageous conduct by forcing him to submit to the breathalyzer test and falsely imprisoning him for almost two weeks.

Initially, any allegations related to false imprisonment cannot form the basis of his IIED claim where the Court has already determined that probable cause existed for his arrest and the pursuit of charges against him. *See Morris v. Smith*, No. 14 C 8076, 2016 WL 3671428, at *2 (N.D. Ill. July 11, 2016) (existence of probable cause for arrest foreclosed an IIED claim based on the arrest). The facts surrounding the administration of the breathalyzer test remain disputed.

But even assuming that the Officer Defendants' alleged actions in forcing Garcia to take a breathalyzer test amount to extreme and outrageous conduct, Garcia has not presented any evidence to suggest he suffered severe emotional distress because of such action. Garcia claims that he suffered stress and worry in addition to a deprivation of physical liberty due to spending nearly two weeks in jail. But stress and worry are not actionable for purposes of IIED claims, nor does shame and embarrassment rise to the level of severe emotional distress required for such a claim. *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1022 (N.D. Ill. 2014). Garcia does not cite anything to support finding that his detention qualifies as severe emotional distress, and the Court questions whether his detention could so qualify. *See Sidney v. Alejo*, No. 16 C 2041, 2018 WL 3659352, at *8 (N.D. Ill. Aug. 2, 2018) (detention in jail for five hours and loss of ten pounds between arrest and criminal trial did not amount to suffering "so severe that no reasonable man could be expected to endure it"). Regardless, nothing in the record suggests that Garcia can trace his detention to the allegedly extreme and outrageous conduct—the manner in which the Officer Defendants allegedly administered the breathalyzer test—instead of to his arrest, which the Court has already found was supported by probable cause even absent the breathalyzer results. *See Estate of Gomes v. County of Lake*, 178 F. Supp. 3d 687, 702 (N.D. Ill. 2016) (nothing in record supported that plaintiff "endured emotional distress that stemmed from the medical defendants' conduct and not from either mental illness or the simple fact of her

predicament"); *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 641, 2012 IL App (4th) 110421, 357 Ill. Dec. 953 (2012) (plaintiff must show that "defendant's conduct actually and proximately caused the plaintiff's distress" to prevail on IIED claim).  Therefore, because a reasonable juror could not conclude that Garcia suffered severe emotional distress because of any of the Officer Defendants' alleged actions, the Court grants summary judgment for them on the IIED claim.

## VI.    *Monell* Claim

The City argues that Garcia cannot prevail on a policy or practice claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A plaintiff may premise *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority.  *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).  The policy or practice "must be the direct cause or moving force behind the constitutional violation."  *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

At the pleading stage, the Court concluded that Garcia had adequately pleaded a claim that the City maintained a practice of arresting and charging anyone sitting in a parked car for any period of time and failed to discipline its police officers.  Doc. 48 at 4–5.  The Court dismissed his claim based on the City's alleged failure to supervise and control its officers.  *Id.* at 5–7.  On summary judgment, Garcia switches gears and argues that the City's express policy of impounding the cars of all DUI arrestees caused the unreasonable seizure of his car because no

probable cause existed to arrest Garcia for DUI and his car was legally parked.[7]  Garcia pursues

his claim only through the first avenue of liability—an express policy—and thus the Court need

not consider whether Garcia can establish liability through the second or third methods.  To

prove this *Monell* claim, Garcia must show that "(1) he suffered a deprivation of a federal right;

(2) as a result of . . . an express municipal policy . . . which (3) was the proximate cause of his

injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002).  Garcia admits that an

impoundment does not violate the Fourth Amendment where supported by probable cause.  *See*

Doc. 71 at 7–8.  The policy at issue provides for the impoundment of a vehicle based on the

existence of probable cause that a person drove the car while under the influence.  And as the

Court has already determined, Garcia cannot show a Fourth Amendment violation in this

situation because the evidence establishes that the Officer Defendants had probable cause to

arrest him for DUI and impound his car.  Because no underlying constitutional injury exists, he

also cannot pursue his *Monell* claim based on the same allegations.  *See Swanigan v. City of

Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his

constitutional rights in his claim against the individual defendants, there will be no viable *Monell*

claim based on the same allegations."); *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 872

(N.D. Ill. 2019) (finding that the municipality "cannot be liable under Monell since [the plaintiff]

has not presented evidence from which a reasonable jury could conclude that he suffered a

---

[7] Because Garcia does not present any argument as to the City's alleged policies or practices related to
arresting and charging anyone sitting in a parked car and failing to discipline its police officers, the Court
finds that Garcia has abandoned these bases for the City's alleged liability.  *See Palmer v. Marion County*,
327 F.3d 588, 597 (7th Cir. 2003) (deeming claim abandoned where plaintiff failed to discuss it in brief in
opposition to summary judgment).

constitutional injury").[8]  Therefore, the Court grants summary judgment for the City on Garcia's *Monell* claim.

## VII.  Remaining Issues

The City also asks the Court to enter summary judgment for it on Garcia's indemnification claim and to dismiss the unknown Chicago police officers named in the caption of the amended complaint.  Having found that certain of Garcia's claims remain viable against the Officer Defendants, the Court cannot dismiss the indemnification claim at this time.  But the Court will dismiss the unknown and unnamed Chicago police officers.  Garcia makes no argument on this issue, and the statute of limitations has run on all of Garcia's claims.  *See Henry v. City of Des Plaines*, No. 15 C 5617, 2015 WL 6407812, at *2 (N.D. Ill. Oct. 21, 2015) (plaintiff cannot take advantage of Rule 15(c) to amend complaint to name unknown officers after statute of limitations has run because plaintiff did not make a mistake in failing to identify the officers within the statute of limitations).  Therefore, the Court dismisses the Unknown City of Chicago Police Officers from this case.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Officer Defendants' and the City's motions for summary judgment [61, 62].  The Court enters judgment for the City and the Officer Defendants on (1) the Fourth Amendment claim (Count I) except as to Garcia's claim against Barber that the initial encounter violated his Fourth Amendment rights; (2) the due process claim (Count II) except as to any claim that the imposition of fees related to

---

[8] This is not a case where a *Monell* claim could proceed against a municipality even without individual officer liability because such a result in this case would create an inconsistent verdict.  *Cf. Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (a municipality may be held liable under *Monell* even when its officers are not where the municipality's liability is not dependent on the actions of its officers).

the impoundment of Garcia's vehicle violated the excessive fines clause of the Eighth Amendment and the alleged forced administration of the breathalyzer test against Barber, Hamilton, and Roman; (3) the civil conspiracy claim (Count III); (4) the *Monell* claim (Count IV); (5) the malicious prosecution claim (Count VI); and (6) the IIED claim (Count VII). The Court dismisses the Unknown City of Chicago Police Officers with prejudice.

Dated: September 17, 2019

SARA L. ELLIS
United States District Judge